UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                                    Case No. 10-80703-DHW
                                                                         Chapter 7
VERONICA R. GOLATTE,

       Debtor.

BYRON L. SMITH,

       Plaintiff,
v.                                                                       Adv. Proc. No. 10-8016-DHW

VERONICA R. GOLATTE,

       Defendant.

MEMORANDUM OPINION

     Creditor Byron L. Smith filed a complaint under 11 U.S.C. § 523(a)(6) to determine the dischargeability of a debt owed by the debtor, Veronica R. Golatte. The complaint alleges that the debtor willfully and maliciously injured the plaintiff by her operation of a motor vehicle.

     The debtor filed a motion for summary judgment. The plaintiff responded, and the debtor filed a motion to strike portions of the defendant's response. The court took the motions under advisement following the hearing held August 8, 2011.

     Upon consideration of the motions and responses, oral arguments of counsel, and the verified materials of record, the court concludes that the defendant is entitled to judgment as a matter of law.

## Jurisdiction

The court's jurisdiction in this adversary proceeding derives from 28 U.S.C. § 1334 and from the general order of the United States District Court for this district referring title 11 matters to the Bankruptcy Court. Because this proceeding is one to determine the dischargeability of a debt, it is a core proceeding under 28 U.S.C. § 157(b)(2)(K) in which this court has jurisdiction to enter a final judgment.

## Plaintiff's Version of the Facts

On January 8, 2006, the debtor was traveling north on I-85. As she approached Exit 57, she was weaving in and out of traffic. As she passed the off ramp to Exit 57, she was in the right-hand lane. She noticed that there was a Waffle House at that exit, and she then went "looking for the left hand lane and an opportunity to turn around in the median."[1] Upon entering the left hand lane without signaling, she noticed a group of motorcyclists behind her. The same group of motorcyclists had been riding in her proximity for the past 10 minutes.

While in the flow of traffic which was estimated to be going 60 mph, the debtor braked hard and brought her car to a halt sideways in the left, inside lane.[2] Because the trailing motorcyclists were traveling next to an 18-wheeler, they had no opportunity to make an evasive maneuver to the right. James Ogden and Byron Smith, two of the motorcyclists, collided with Defendant Golatte's car. James Ogden was killed; Smith sustained serious physical injuries.

---

[1] The debtor knew that it was less than one mile to the next exit.

[2] The debtor did not signal either her move from the right lane into the left lane or her attempted move into the median for her "ultimate u-turn maneuver." The debtor stated in deposition that she did, but there is no corroboration for her statement, and the debtor even admits that her statement should be viewed skeptically.

The debtor was indicted and charged with homicide by vehicle pursuant to *Ala. Code* § 32-5A-192 (1975) for the death of James Ogden and sentenced to 2½ years imprisonment. The jury necessarily concluded that the debtor caused the accident.[3] She remains today on supervised probation and continues to pay restitution through the State of Alabama.

The testimony in the debtor's criminal trial was that she decelerated with such force that the front end of her vehicle dove down and the rear end rose up. Defendant Golatte counters that this testimony was perjury as she claims to have only slowed down. The debtor has testified that she knew at the time of the accident that it was her fault.

Smith filed a complaint against the debtor in state court in December 2006. The complaint contains two counts: gross negligence and wantonness. Smith obtained a monetary judgment in March 2010 in the amount of $534,056.00, including an award of punitive damages on the wantonness count. The debtor did not appeal the judgment.

On the date of the accident, the defendant carried an unlicensed pistol and had no insurance. She had decided to stop paying the premiums over two weeks prior.

---

[3] *Ala. Code* § 32-5A-192 states in full as follows:

(a) Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle, or vessel, as defined in Section 33-5-3, or to the regulation of traffic or boating, shall be guilty of homicide when the violation is the proximate cause of the death.

(b) Any person convicted of homicide by vehicle or vessel shall be fined not less than five hundred dollars ($500) nor more than two thousand dollars ($2,000), or shall be imprisoned for a term not less than one year nor more than five years, or may be so fined and so imprisoned. All fines collected for violation of this section relating to vessels shall be paid into the State Water Safety Fund.

Debtor's Facts in Response

As the debtor passed Exit 57, she realized she needed gasoline and also wanted to get something to eat. She was on the inside "left" lane of the interstate, saw a break in the median, and turned into the median on the gravel turn around. Her vehicle did not leave any skid marks at the scene, and she was not cited for any traffic violation.

Smith was riding a motorcycle in a pack of six with a man in front of him and a man beside him. Smith recalls the debtor coming to a sudden stop. However, Smith testified that because of his position in the pack, he could not see around the man in front of him.

The debtor testified that she did not believe she was doing anything illegal. She did not intend to hurt Smith in any way. She had no ill will towards any of the gentlemen on the motorcycles. Her intent in turning into the median was to get gasoline and go to the Waffle House.

Although Smith testified that the debtor stopped on the interstate and did not get out of the way, he also testified that the debtor "hit the accelerator at least a couple more feet by the time we arrived."

Standards of Law
<u>Summary Judgment Standard</u>

The standard for summary judgment established by Fed. R. Civ. Proc. 56 is made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. Proc. 7056. The rule provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. Proc. 56(c).

Summary judgment is appropriate when "there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).

The party moving for summary judgment "bears the burden of proving that no genuine issue of material fact exists." *Information Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). Once met, the burden shifts to the non-movant to "show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." Id. at 1224-25.

## Section 523(a)(6)

An exception to discharge is to be strictly construed, and the creditor bears the burden of proving the exception.[4] *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir. 1986). Exceptions are construed strictly to give effect to the fresh start policy of the Bankruptcy Code. *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164-65 (11th Cir. 1995). The creditor must prove each of the elements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

11 U.S.C. § 523(a)(6) excepts from discharge a debt for a willful and malicious injury by an individual debtor:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

---

[4] *See Equitable Bank v. Miller (In re Miller)* 39 F.3d 301, 304 (11th Cir. 1994). "[C]ourts generally construe the statutory exceptions to discharge in bankruptcy 'liberally in favor of the debtor,'" recognizing that the "'reasons for denying a discharge . . . must be real and substantial, not merely technical and conjectural.'" *Id.* (citations omitted).

Case 10-08016    Doc 27    Filed 09/01/11    Entered 09/01/11 15:16:17    Desc Main
Document    Page 5 of 9

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Under 11 U.S.C. § 523(a)(6), the injury must be both "willful and malicious." "Willful" means deliberate or intentional. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3, 118 S. Ct. 974, 977 (1998). "Willful" modifies "injury," "indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id*. at 61. To be nondischargeable, the debtor must intend to injure the defendant or his property.[5] *Id*. at 61. "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6). *Id*. at 64.

"Malicious" means "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995) (quoting *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989)).

## Conclusions of Law

As stated above, "the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d at 1023. Therefore, to the extent that the versions of the facts alleged by the plaintiff and debtor differ, the court accepts the plaintiff's version of the facts. The court concludes that there is no genuine issue of material fact, because, even under the plaintiff's version of the facts, the defendant is entitled to judgment as a matter of law.

## Malicous

Smith contends that the state court has already determined that the

---

[5] It is not sufficient that the debtor intentionally committed an act which resulted in injury if the injury itself was neither intended nor substantially certain to result from the act. *Hope v. Walker (In re Walker)*, 48 F.3d 1161 (11th Cir. 1995).

injury was "malicious" and that the doctrine of collateral estoppel precludes this court from relitigating the issue. The principles of collateral estoppel apply to dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284-85 n.11, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991);[6] *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (1993).

Under Alabama law,[7] the doctrine of collateral estoppel precludes relitigation of an issue where 1) the issue is identical to an issue litigated in a prior proceeding; 2) the issue was actually litigated in the prior proceeding; 3) resolution of the issue was necessary to the prior judgment; and 4) the parties in the present proceeding are the same as the parties in the prior proceeding. *Lott v. Toomey*, 477 So. 2d 316, 319 (Ala. 1985).

The state court civil judgment reflects a determination that the debtor's conduct was wrongful. Smith received a $534,056.00 judgment, including an award of punitive damages on his count for wantonness. It also appears that the judgment reflects a determination that the debtor was without just cause or excuse for her actions. However, the undisputed facts before this court on the motion for summary judgment reveal this as well. The debtor imperiled the lives of the motorcyclists solely because she needed gas and wanted to eat at the Waffle House. The court concludes that the injury was malicious under 11 U.S.C. § 523(a)(6).

---

[6] Although the validity of a creditor's claim is determined by rules of state law, the issue of nondischargeability is governed by the terms of the Bankruptcy Code. *Grogan v. Garner,* 498 U.S. 279, 283-284, 111 S. Ct. 654, 657-658 (1991) (citing *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161, 67 S. Ct. 237, 239, 91 L. Ed. 162 (1946) and *Brown v. Felsen*, 442 U.S. 127, 129-130, 136, 99 S. Ct. 2205, 2208-09, 2211, 60 L. Ed. 2d 767 (1979)). Nevertheless, bankruptcy courts must "give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge[ability] and which were actually litigated and determined in the prior action." *Grogan,* 498 U.S. at 284 (citing Restatement (Second) of Judgments § 27 (1982)).

[7] "If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675-76 (11th Cir. 1993).

## Willful

However, the state court judgment does not reflect a determination that the debtor intended to injure Smith. Indeed, a determination of intentional injury was not necessary for the resolution of the issues before the state court. The state court complaint was predicated on gross negligence and wantonness.

Neither does the award of punitive damages reflect a determination that the debtor intended the injury. Under Alabama law, punitive damages are available in tort actions "where it is proven . . . that the defendant . . . engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." Ala. Code § 6-11-20(a) (1975). Wantonness is defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3) (1975). Because punitive damages may be awarded for reckless conduct, an award of punitive damages does not necessarily reflect a determination that a defendant acted intentionally. *Miller v. Held (In re Held)*, 734 F.2d 628 (11th Cir. 1984). Therefore, the doctrine of collateral estoppel does not bar litigation on the issue of whether the debtor intended the injury.

Having found that the prior state court judgment is not preclusive on the issue of the debtor's intent, the court turns to the evidence presented on the motion for summary judgment. The debtor filed a motion to strike some of the evidence presented by the plaintiff. However, the court need not rule on that motion because even considering that evidence, the court concludes that the plaintiff has not proved the "willful" element by a preponderance of the evidence.

Examining the evidence in a light most favorable to the plaintiff, the evidence does not show that the debtor intended to injure the motorcyclists that were traveling behind her. The evidence does show that the debtor, for very frivolous reasons, engaged in grossly negligent and reckless behavior, endangering the lives of those around her. There is no evidence that the debtor had any prior association with the motorcyclists, on or off the road, other than their traveling proximity for the past 10 minutes. The motive behind the debtor's behavior was food and gasoline.

There is no question that the debtor breached the duty of care imposed by law. There is no question that an ordinarily prudent person would have realized that her actions were placing others at extreme risk. However, there is no evidence that the debtor herself intended to injure these motorcyclists or knew with substantial certainty that her actions would result in injury.

## Conclusion

For the above reasons, the court concludes that the plaintiff has proved that the injury to Smith was "malicious" but has not proved that it was "willful." Therefore, the debtor's motion for summary judgment is due to be granted. An order consistent with this memorandum opinion will enter separately.

Done this 1st day of September, 2011.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge